UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

EDDY FELIZ-AYALA

v.                                                          Case No. 3:10cv696 (SRU)

SCOTT SEMPLE, ET AL.

### RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The plaintiff, Eddy Feliz-Ayala, currently confined at Corrigan-Radgowski Correctional Institution in Uncasville, Connecticut, has filed this civil rights action *pro se* and *in forma pauperis* pursuant to 28 U.S.C. § 1915.  He alleges *inter alia* that on March 1, 2010, the defendants used excessive force against him when they sprayed a chemical agent into his cell and then forcefully removed him from the cell, causing him to suffer injuries to his face, head, and back.

Pending before the court is a motion for summary judgment filed by the defendants.  For the reasons that follow, the motion for summary judgment is denied part and granted in part.

**I.     Standard of Review**

With a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  The moving party may satisfy this burden by demonstrating the lack of evidence to support the nonmoving party's case.  *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam).

"Summary judgment is appropriate where, construing all evidence in the light most favorable to the non-moving party," *Pabon v. Wright*, 459 F.3d 241, 247 (2d Cir. 2006), "the

pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).  An issue of fact is "material" if it "might affect the outcome of the suit under the governing law," and is "genuine" if "a reasonable jury could return a verdict for the nonmoving party" based on it.  *Anderson*, 477 U.S. at 248. "Unsupported allegations do not create a material issue of fact." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).  When a motion for summary judgment is supported by documentary evidence and sworn affidavits, the nonmoving party must do more than vaguely assert the existence of some unspecified disputed material facts or present mere speculation or conjecture.  *See Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990) (quotations and citations omitted).  The mere of existence of a scintilla of evidence in support of the nonmoving party's position is insufficient; there must be evidence on which the jury could reasonably find for him. *See Dawson v. County of Westchester*, 373 F.3d 265, 272 (2d Cir. 2004).

The court resolves all ambiguities and draws all permissible factual inferences in favor of the nonmoving party.  *See Patterson v. County of Oneida*, 375 F.3d 206, 218 (2d Cir. 2004).  If there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper.  *See Security Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

Where one party is proceeding *pro se*, the court reads the *pro se* party's papers liberally and interprets them to raise the strongest arguments suggested therein.  *See Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994).  Despite this liberal interpretation, however, an unsupported assertion cannot overcome a properly supported motion for summary judgment.  *Carey v.*

*Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).

## II.     Facts[1]

On March 1, 2010, Feliz-Ayala was confined at Garner Correctional Institution and shared a cell 124 in the Alpha Unit with Inmate David Joyce.  After eating lunch that day, Feliz-Ayala's cellmate went to the Counselor's Office located in Room 134 in Alpha Unit and inquired about a legal telephone call.  When Counselor Michael Bethke and Correctional Officer Steven Dechello asked Joyce to leave the office, Joyce squared off and threatened Dechello.  Bethke and Dechello assumed defensive ready positions.   Joyce initially refused return to his cell.  In response to several direct orders to return to his cell, Joyce then complied.

Shortly after this incident, Dechello requested that Counselor Supervisor Brian Bouffard report to Alpha Housing Unit.  Upon Bouffard's arrival in the unit, Dechello briefed him regarding the incident in the counselor's office.   A decision was made to move Joyce to the restrictive housing unit.   Bouffard approached Feliz-Ayala and Joyce's cell and ordered Joyce to put his hands through the trap door and be handcuffed, but Joyce refused to comply with the order.  Bouffard asked Joyce if he was refusing to cuff up and Joyce responded in the affirmative.

Bouffard then left the unit to notify Lieutenant Lance Morris about the incident.  Joyce

---

[1]  The facts are taken from the defendants' Local Rule 56(a)1 Statement, the exhibits attached to the statement, including videotapes of the events that occurred on March 1, 2010, and the Affidavit of Captain Charlies Barberi, Docs. Nos. 26-2 through 26-8, and Feliz-Ayala's complaint, Doc. No. 1.  Although Feliz-Ayala has not submitted an affidavit to support his claims and oppose defendants' motion for summary judgment, the contents of his complaint are sworn to under the penalty of perjury and thus constitute the equivalent of an affidavit for purposes of defendants' summary judgment motion.  *See Franco v. Kelly*, 854 F.2d 584, 587 (2d Cir. 1988) (citing *Pfeil v. Rogers*, 757 F.2d 850, 859 & n.15 (7th Cir. 1985) (noting that documents sworn under penalty of perjury may suffice for summary judgment purposes even if they do not meet all of the formal requirements of a notarized affidavit)), *cert. denied*, 475 U.S.

immediately covered the window in the cell door.

Within five minutes, Morris and Lieutenant Jason Gagnon reported to Feliz-Ayala's cell. Without success, Morris and Gagnon attempted to verbally convince Joyce to submit to handcuffing in order to be transferred to the Restrictive Housing Unit. Joyce became increasingly agitated and belligerent, and verbalized his intent to harm correctional staff if they attempted to enter the cell. At one point, Morris noticed that Joyce was holding an unknown object in his hand and had put a mattress and a chair in front of the cell door to impede anyone's entry into the cell. A social worker attempted to persuade Joyce to exit the cell voluntarily, but she was unsuccessful.

When Joyce covered both the front and back windows of the cell, Morris opened the trap in the cell door and Officer Mark D'Alessio held a plexiglass shield over the opening. Morris was then able to maintain visual contact with Joyce and Feliz-Ayala through the trap door to the cell. At one point, Joyce covered the trap opening with a towel. Morris gave Joyce direct orders to remove the obstruction from the trap opening, and warned him that a chemical agent would be used if he failed to remove the obstruction. In response, Joyce claimed to have chemical agents he intended to use on correctional staff. When Joyce refused to remove the obstruction, Morris determined that he needed to take immediate action to gain visual contact with Joyce and Feliz-Ayala.

Morris administered two bursts of pepper spray, one through the trap in the cell door and one under the cell door. In response to the first burst of pepper spray, Joyce threw floor wax through the trap opening. The floor wax was diverted by the trap shield held by D'Alessio. After the second burst of pepper spray, Morris was able to remove the towel from the trap

---

1107 (1986)).

opening.

Morris and Gagnon then contacted Deputy Warden Timothy Farrell and requested permission to deploy the Cell Extraction Team to remove Feliz-Ayala and Joyce from their cell. Farrell granted the request. Correctional Nurse Ken Gilbert cleared both Feliz-Ayala and Joyce for any contraindications to the use of chemical agents.

Although Joyce was the instigator of the events that had occurred in the cell, Department of Correction policy dictated that it was necessary to include Feliz-Ayala, as Joyce's cellmate, in the cell extraction. According to the defendants, it would have been dangerous to Feliz-Ayala and the prison staff to attempt to remove Feliz-Ayala from the cell after Joyce refused to exit the cell voluntarily and had begun to cover the cell window.

After the Cell Extraction Team arrived at the cell, Morris directed Feliz-Ayala to lie on his stomach on his bunk with his hands behind his back. Feliz-Ayala complied. Gagnon issued several orders to Joyce to lie on his bed, but he refused to comply. Gagnon then administered one burst of pepper spray through the trap door in the cell, but Joyce blocked the trap. Two members of the Cell Extraction Team partially opened the cell door to permit Gagnon to deploy pepper spray again in an effective manner. At that time, Joyce attempted to exit the cell, but he was pushed back by the pepper spray, and members of the Cell Extraction Team were able to secure the cell door.

Morris directed Joyce to lie on his bed, but he refused to comply. Morris then administered another burst of pepper spray through the trap opening and ordered Joyce to lie on his bunk; Joyce complied with that order. At that time the Cell Extraction Team opened the door and entered the cell. Feliz-Ayala was lying on the top bunk face down in accordance with Department of Correction policy.

Correctional Officers John Miklavzina and Doug Mescavage secured Feliz-Ayala by placing a shield over his body and applying handcuffs to his wrists. Under the supervision of Morris, Miklavzina and Mescavage escorted Feliz-Ayala to the shower just outside the cell to be decontaminated. After decontamination, the same officers escorted Feliz-Ayala to a multi-purpose room for medical assessment.

When Feliz-Ayala arrived at the multi-purpose room, he informed Miklavzina, Mescavage, and Morris that he had been hit during his removal from the cell. Feliz-Ayala did not inform the nurse who came to examine him that he had suffered any injuries. The following day, a nurse observed a contusion to Feliz-Ayala's left eyelid. A physician examined Feliz-Ayala's injury. In response to the physician's orders, the nurse provided Feliz-Ayala with an ice pack and advised Feliz-Ayala to follow up with the medical department if he continued to experience any pain or swelling in the area of the contusion or any difficulty with his vision. Feliz-Ayala was released from the restrictive housing unit after correctional staff determined that he had not played a role in the cell obstructions.

**III.   Discussion**

Feliz-Ayala contends that on March 1, 2010, defendants Dechello and Harris failed to protect him from potential harm by Joyce; defendants Howard Burritt, Jeremy Chicano, Israel Rodriguez, Miklavzina, Mescavage, and Scott Griffin used excessive force against him when they extracted him from the cell and hit him in the eye; defendants Morris, Gagnon, Bouffard, Wayne Burns, and D'Alesseo used excessive force when they administered approximately seven bursts of pepper spray into his cell prior to and during the cell extraction; and defendant Morris failed to protect him from harm when he refused to let Feliz-Ayala exit the cell prior to the extraction. The defendants argue that Feliz-Ayala has failed to demonstrate that they used

excessive force against him during the cell extraction, that a number of defendants were not personally involved in the alleged constitutional violations, and that they are entitled to qualified immunity.

      A.      <u>Excessive Force</u>

Feliz-Ayala claims that defendants Burritt, Chicano, Rodriguez, Miklavzina, Mescavage, and Griffin used excessive force against him when they entered his cell and punched him in the eye, face, head and back. Feliz-Ayala also asserts that defendants Morris, Gagnon, Bouffard, Burns, and D'Alesseo used or failed to intervene to stop the use of excessive force when approximately seven bursts of pepper spray were directed into his cell prior to and during the cell extraction. In connection with this claim, Feliz-Ayala contends that Warden Scott Semple failed to have a policy in place to regulate the excessive use of pepper spray. The defendants argue that the videotape of the incident shows no use of excessive force by defendants Burritt, Chicano, Rodriguez, Miklavzina, Mescavage, and Griffin.

When an inmate claims that excessive force has been used against him by a prison official, he has the burden of establishing both an objective and subjective component to his claim. *See Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993). The objective component relates to the seriousness of the injury. A plaintiff need not prove that he suffered a serious or significant injury, however, to state a claim of excessive force. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) ("[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated" irrespective of whether significant injury is present); *Sims v. Artuz,* 230 F.3d 14, 21 (2d Cir. 2000) ("no such showing of extreme injury is required when the claim is that prison officials used excessive force"); *Blyden v. Mancusi*, 186 F.3d 252, 263 (2d Cir. 1999) (malicious use of force to cause harm constitutes an

"Eighth Amendment violation[] per se . . . whether or not significant injury is evident."). This objective component is "contextual and responsive to 'contemporary standards of decency.'" *Hudson*, 503 U.S. at 2 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)).

The subjective component requires the inmate to show that the prison officials acted wantonly. With regard to an excessive force claim, the inmate must show that the prison officials acted "maliciously and sadistically to cause harm . . . ." *Id.* at 7. Even de minimis uses of force are unconstitutional if they are "repugnant to the conscience of mankind." *Id.* at 10-11 ((internal quotation marks and citations omitted).

The subjective component focuses on "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* (citing *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)). The court considers factors including "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Id.* (internal quotations and citation omitted).

The videotape of the extraction of Feliz-Ayala from his cell on March 1, 2010, shows that defendants Burritt, Chicano, Rodriguez, Miklavzina, Mescavage and Griffin were the officers who made up the Cell Extraction Team. The videotape depicts Mescavage placing the plexiglass shield over Feliz-Ayala as he lay on his bunk and Miklavzina applying handcuffs to his wrists. Miklavzina and Mescavage then escorted Feliz-Ayala to the shower located just outside the cell to be decontaminated. After Feliz-Ayala had washed off the pepper spray residue in the shower, Miklavzina and Mescavage escorted him to a multi-purpose room within the housing unit. There is no evidence of any of the members of Cell Extraction Team punching Feliz-Ayala, dragging him off the top bunk, or smashing his face up against the wall of the cell.  (*See* Defs.'s Mem.

8

Supp. Summ. J., Ex. B, Videotapes 10-135, 10-136.)

Feliz-Ayala's left eye appears to be slightly puffy as he is escorted out of the cell to be decontaminated in the shower. When he arrived at the multi-purpose room a short time later, he asked one of the officers if his face or eye looked swollen, and stated that he thought one of the officers hit him during the cell extraction. The nurse who examined Feliz-Ayala noted no injuries, and Feliz-Ayala did not inform the nurse that he suffered any injuries during his removal from the cell. The following day, a nurse examined Feliz-Ayala and noted that he had suffered a contusion to the left eye area. A physician examined the injury and directed the nurse to provide Feliz-Ayala with an ice pack. The nurse informed Feliz-Ayala that he should contact the medical department if he continued to have any swelling or pain or if he had any problems with his vision. (*See* Defs.'s Mem. Supp. Summ. J., Ex. A.) There is no evidence that Feliz-Ayala made any further attempts to contact the medical department regarding the injury to his eye.

Feliz-Ayala has failed to present any evidence to suggest that the injury that he suffered to his eye was due to an excessive or malicious use of force by Burritt, Chicano, Rodriguez, Miklavzina, Mescavage, or Griffin. The defendants have submitted evidence to show that the force employed to extract Feliz-Ayala from his cell was necessary to restore discipline and order to Feliz-Ayala's housing unit. Furthermore, the amount of force used was reasonable given that Joyce had repeatedly refused to come out of the cell, covered the cell window, thrown a liquid substance from trap door of the cell and had threatened to harm correctional staff. Thus, Feliz-Ayala has provided insufficient evidence to meet his burden in opposition to the motion for summary judgment regarding the objective and the subjective components of the Eighth Amendment excessive force standard. The motion for summary judgment is granted on the

ground that Feliz-Ayala has failed to demonstrate that defendants Burritt, Chicano, Rodriguez, Niklavzina, Mescavage, and Griffin used excessive force in extracting him from his cell.

Feliz-Ayala raises two other excessive force claims related to the use of pepper spray by defendants Morris, Gagnon, Bouffard, D'Alesseo, and Semple.  He asserts that defendants Morris, Gagnon, Bouffard, Burns and D'Alesseo used or failed to intervene to stop the use of excessive force when seven bursts of pepper spray were directed into his cell prior to and during the cell extraction.  In connection with this claim, Feliz-Ayala contends that Semple failed to have a policy in place to regulate the excessive use of pepper spray during cell extractions.  Because the defendants do not address these claims, they remain pending.

  B. <u>Conditions of Confinement Claims</u>

Feliz-Ayala contends that Morris could have removed him from his cell prior to administering multiple bursts of pepper spray and directing the Cell Extraction Team to remove him from the cell.  Feliz-Ayala alleges that Semple should have implemented a policy regarding the removal of an inmate from a cell prior to extracting his or her cellmate using pepper spray and a Cell Extraction Team.  These claims may be construed as claims of deliberate indifference to his safety.  The defendants argue that they responded to the risk to Feliz-Ayala's safety in a reasonable manner.

The Supreme Court has held that "[a] prison official's deliberate indifference to a substantial risk of harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (internal quotation marks and citations omitted).  To state an Eighth Amendment claim based on the conditions of confinement, a plaintiff must allege that the prison official's conduct was objectively "sufficiently serious" and that "the officials acted, or omitted to act, with a sufficiently culpable state of mind, *i.e.*, with deliberate indifference to inmate

health or safety." *Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002) (internal quotation marks and citations omitted).

A prisoner's conditions of confinement must meet "minimal civilized measures of life's necessities." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). This means that prison officials must provide for inmates' basic human needs – e.g., food, clothing, shelter, medical care, and reasonable safety." *DeShaney v. Winnebago County Dept. of Social Servs.*, 489 U.S. 189, 200 (1989). A prison official's act or omission can give rise to liability if it results in the denial of the inmate's basic human needs.

To satisfy the subjective requirement of an Eighth Amendment conditions claim, Feliz-Ayala must demonstrate both that he is incarcerated under conditions that pose a substantial risk of serious harm, and that the defendant prison officials possessed culpable intent; that is, the officials knew that he faced a substantial risk to his health or safety and disregarded that risk by failing to take corrective action. *See Farmer*, 511 U.S. at 834, 837. A prison official who "actually knew of a substantial risk to inmate health or safety," but responded in a reasonable manner to the risk, "may be found free from liability" under the Eighth Amendment, "even if the harm ultimately was not averted." *Id.* at 844. Allegations constituting mere negligence are not cognizable under section 1983. *See Hayes v. New York City Dep't of Corrections*, 84 F.3d 614, 620 (2d Cir. 1996).

The defendants concede that Feliz-Ayala's safety as it relates to being exposed to a chemical agent and use of force in extracting him from his cell constitutes a basic human need. The defendants argue, however, that they were not deliberately indifferent to Feliz-Ayala's safety when they required him to remain in his cell prior to his extraction, because they were complying with Department of Correction policy.

11

The videotape of the incident reflects that Morris did not arrive at Feliz-Ayala's cell until Joyce had refused to exit the cell and had covered his cell window with a towel depriving correctional staff of any view inside the cell. Morris then engaged in a verbal conversation with Joyce in an attempt to persuade him to exit the cell peacefully. During that verbal exchange, Joyce became agitated, loud, and threatening towards staff. Gagnon then had a verbal conversation with Joyce. During that conversation, Joyce stated that he would not let Feliz-Ayala leave the cell. Joyce continued to refuse to leave his cell.

It is well established that prison officials must be given leeway to make administrative decisions when matters of security are at issue. *See Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 132-33 (1977) ("Responsible prison officials must be permitted to take reasonable steps to forestall . . . threat[s to security], and they must be permitted to act before the time when they can compile a dossier on the eve of a riot."); *Turner v. Safley*, 482 U.S. 78, 84-85 (1987) (courts should be hesitant to interfere with internal prison administration, which is a matter within the realm of expertise of prison officials). The defendants have submitted the Affidavit of Charles Barbieri, who is the Coordinator of Training for the Department of Correction Center for Training and Staff Development. (*See* Defs.'s Mem. Supp. Summ. J., Ex. C, Barbieri Aff.) Barbieri avers that it was appropriate for Morris to keep Feliz-Ayala in the cell prior to and during the extraction because there was no safe way to remove him from the cell. (*See id.*, Barbieri Aff. ¶¶ 5-6.) In situations in which one inmate has refused to exit the cell, it is potentially dangerous to that inmate's cellmate as well as correctional staff to attempt to remove the cellmate prior to the extraction procedure. (*See id.*, Barbieri Aff. ¶ 6.)

Furthermore, it is Department of Correction policy for correctional staff to instruct the non-participating inmate to lie down in a neutral position during a cell extraction procedure.

(*See id.*, Barbieri Aff. ¶ 7.)  In compliance with Department of Correction policy, Morris told Feliz-Ayala to lie down on his stomach on his bunk with his hands behind his back about five minutes before the Cell Extraction Team entered the cell.  (*See* Defs.'s Mem. Supp. Summ. J., Ex. B, Videotapes 10-135, 10-136.)  The use of a shield to stabilize the non-participating inmate during the cell extraction was in line with Department of Correction policy as well.  (*See id.*, Barbieri Aff. ¶ 8.)

The actions of Morris in denying any requests by Feliz-Ayala to be removed from the cell prior to the extraction procedure were reasonable in response to the risk created by the circumstances.  At the time that Morris arrived at the cell, Joyce had already refused to be handcuffed and removed from the cell and had covered the window of the cell, blocking any view inside the cell.  Joyce later covered the trap opening in the cell door further obstructing the view inside the cell, became increasingly angry and belligerent, and threatened to harm staff.  There is no evidence that Morris could have safely removed Feliz-Ayala from the cell at that point or any other point prior to his extraction from the cell.

With regard to the allegation against Semple, there was a policy in place on March 1, 2010 regarding cell extractions and the removal of a non-participating inmate.  The policy described above was reasonable given the difficult task of removing an inmate from a cell in which another inmate has become agitated and threatening, and has refused to exit the cell peacefully.  The policy considered the safety of the non-participating inmate as well as correctional staff.  Although the defendants' compliance with the policy may have resulted in Feliz-Ayala suffering some harm, including a minor injury to his eye and exposure to pepper spray, it was reasonable under the circumstances for the defendants to have followed the policy.  Accordingly, the motion for summary judgment is granted in favor of defendants Morris and

Semple with respect to the claims of deliberate indifference to safety.

Feliz-Ayala has asserted a second claim of deliberate indifference to his safety. He alleges that defendants Dechello and Harris were deliberately indifferent to his safety when they required him to go back to his cell after the potentially volatile incident between Joyce and Dechello. Feliz-Ayala argues that these defendants should have permitted him to go to the dayroom and remain in the dayroom until they had removed Joyce from his cell and transferred him to the restrictive housing unit. Because the defendants have not addressed this claim, it remains pending.

### C. State Law Claims

Feliz-Ayala asserts state law claims of assault and negligence against all defendants. The defendants contend that if the court dismisses all federal claims against them, it should decline to exercise supplemental jurisdiction over Feliz-Ayala's state law claims.

The court continues to possess supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(a), over the claims alleged under Connecticut state law against Dechello and Harris because federal claims remain against them, and those claims "form part of the same case or controversy," as the state law claims.

Feliz-Ayala has also pled state law claims against defendants Burritt, Chicano, Rodriguez, Miklavzina, Mescavage, and Griffin. Although I have dismissed the federal claims against those defendants, the state law claims against them "form part of the same case or controversy" as the federal claims against the other defendants, and therefore I retain supplemental jurisdiction over them. *See* 28 U.S.C. § 1367(a) ("[S]upplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties."); *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002) (vacating dismissal of state law claims against

14

defendant where section 1983 claim remained against other defendants).

### IV.   Conclusion

The Motion for Summary Judgment [**Doc. No. 45**] is **GRANTED** with respect to the Eighth Amendment claim of excessive force against defendants Burritt, Chicano, Rodriguez, Miklavzina, Mescavage and Griffin and with respect to the Eighth Amendment claim of deliberate indifference to safety against defendants Morris and Semple.

The Motion for Summary Judgment [**Doc. No. 45**] is **DENIED** in all other respects.  The following federal claims remain pending: (1) defendants Morris, Gagnon, Bouffard, Burns and D'Alesseo used or failed to intervene to stop the use of excessive force when approximately seven bursts of pepper spray were directed into Feliz-Ayala's cell prior to and during the cell extraction; (2) defendant Semple failed to have a policy in place to regulate the excessive use of pepper spray during cell extractions; and (3) defendants Dechello and Harris were deliberately indifferent to Feliz-Ayala's safety when they required him to go back to his cell after the potentially volatile incident between Joyce and defendant Dechello.  The state law claims against all defendants also remain.

**SO ORDERED** this 30th day of May 2012, at Bridgeport, Connecticut.

/s/ Stefan R. Underhill
Stefan R. Underhill
United States District Judge